IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

BRUCE L BAIRD, an individual,
      Plaintiff,

v.

COUNTY OF KENT, a Michigan
municipal corporation,
      Defendant.

**COMPLAINT**

## NATURE OF THE ACTION

1. This is a civil rights action under 42 U.S.C. § 1983 and the United States Constitution arising from Defendant's issuance and threatened enforcement of correction orders concerning the septic system at 13637 3 Mile Road NE, Lowell, Michigan 49331, and Defendant's related actions that have deprived Plaintiff Bruce Baird of notice and a meaningful opportunity to be heard, and have interfered with his ability to make lawful use of his property, in violation of the Fourteenth Amendment and other federal rights.

2. In 2014, Mr. Baird became the sole owner of 13637 3 Mile Road NE, Lowell, Michigan 49331. Title is now held by the Bruce L Baird Trust, and Mr. Baird is the Trust's primary beneficiary with possessory rights to the property. The property's old farmhouse is served by a well and an onsite septic system that were installed decades ago.

3. On September 10, 2025, the Kent County Health Department issued Mr. Baird a permit for a new well and a new septic system. The permit expires on September 10, 2027. The permit approved a new septic system to be located where the current well sits. Because of this, installing the septic before the well would make the farmhouse uninhabitable without running water for weeks or months, depending on contractor availability. The permit therefore states that "well installation is required prior to septic system installation" and that "[f]inal approval of this well is required prior to use."

- 1 -

4. Mr. Baird relied on the permit and had a new well drilled that is ready for use, and Defendant knows that Plaintiff has a contractor lined up to install a new septic system. However, after Plaintiff requested that Defendant perform the required testing and complete final approval on November 24, 2025, Defendant refused, asserting instead that "[t]he Health Department is unable to approve the new well on the property until a septic system is in place and passes inspection." The result is a Catch-22 that exposes Mr. Baird to enforcement risk no matter which instruction he follows. Defendant's counsel was notified of this situation but refused to correct it.

5. The current septic system would likely not meet Kent County's current standards under sewage and housing regulations. However, it has never had any known problems, including any of the signs that would create a hazard to public health and safety, a nuisance, or degradation of the natural environment such as sewage backups, surfacing effluent, or objectionable odors. Because the septic system was installed decades before the regulations were in place, it is therefore not in violation of the regulations under the "grandfather clause" that allows "[s]ewage disposal facilities in use prior to the effective date of these Regulations [to] continue in use only if such usage does not create a hazard to public health and safety, a nuisance, or degradation of the natural environment."

6. Defendants issued a correction order against the Plaintiff under sewage regulations for the septic system that was based on the fact that "[a] pipe from the house to the ditch in the cornfield was mentioned per homeowner" even though (a) Mr. Baird, the homeowner, was not present at the site visit, and (b) no such ditch in the cornfield even exists.

7. Defendant's practice in issuing correction orders is to rely on an "*acceptable* to the Health Officer" standard in the regulations to make legal conclusions as a substitute for evidence of any actual system failure or public health hazard, while also noting that "[Defendant's] regulations have always held up under legal scrutiny in the past." Brendan

Earl, a supervisor at the Kent County Heath Department, wrote in one email to Plaintiff's counsel that "[i]f you read through the county regulations when it comes it nuisances, it uses phrases like 'which is, or may become, a public health nuisance' or 'an actual or potential danger to public health and safety,'" and that "[t]he existing system at the home meets these criteria." However, when Plaintiff's counsel requested any evidence or documentation supporting the alleged violations, Defendants wrote "[w]e are unable to provide you any field notes or other documentation due to the Freedom of Information Act (FOIA)."

8. In response to Plaintiff's counsel's subsequent FOIA request, Defendants produced materials that contain no evidence or finding of a violation. Defendant eventually stated that the correction order was issued solely because the system's precise location/operation was not yet documented. When Plaintiff's counsel asked for the rule or standard that authorizes such a finding, Defendant could not identify one.

9. Defendant's practices are to flip the burden of proof and require homeowners to disprove alleged violations that the Department fails to offer any evidence of, which requires owners to dig up their yards. Defendant's practices are thus to treat septic systems as presumptively unlawful based on missing historical documentation, gutting the grandfather clause in the sewage and housing regulations.

10. After Plaintiff's counsel challenged Defendant's actions, Defendant retaliated against Mr. Baird for seeking legal assistance by escalating to more severe violations under not just *sewage regulations* as in the first correction order but also *housing regulations* that were not present in the first correction order. But Defendants did not follow service procedures outlined in the housing regulations and take the position that the procedural requirements in the housing regulations for which a violation was cited are, as Defendant's counsel writes, "irrelevant." Defendants also misdated the correction order in an attempt to block Mr. Baird's ability to invoke the appeal process described on the correction order.

11. When Mr. Baird filed a written appeal within the appeals window, Defendants denied him meaningful process. The correction order advised that he "must petition the Health Department in writing" within 20 days. On repeated occasions, Plaintiff's counsel requested appeal instructions from multiple members of Health Department staff and Defendant's counsel, but Defendant did not inform Plaintiff's counsel of an appeals form and a $250 fee. Mr. Baird submitted a timely written appeal that Department staff accepted and docketed. Only after the appeal period had run did Defendants reject the appeal on the basis of the undisclosed requirements that were not stated on the correction order and were not provided in response to Plaintiff's inquiries. Defendants then asserted that any lawsuit would be "frivolous" because Mr. Baird allegedly failed to exhaust administrative remedies, even though Defendants themselves foreclosed timely access to the appeal process and administrative exhaustion is not generally a prerequisite to a 42 U.S.C. § 1983 claim.

12. Defendant's dispute appears to be with lawmakers, not Plaintiff. Defendants appear to believe that the grandfather clause is bad policy, and their practices allow them to make their own policy regarding the grandfather clause. The Defendants are not lawmakers and must follow the law as written. If they want to eliminate the grandfather clause, they have to persuade the appropriate lawmakers to amend the regulations, not adopt their own practices that undo it. Plaintiff is simply caught in the middle of a disagreement between those who draft the regulations and the public health officials charged with enforcing them.

13. The Defendant's practices in effect prevent people who inherit property that has a septic system that was installed before the regulations—and thus grandfathered in—from making full use of their property. Most major property improvements require the Health Department to visit because they must confirm compliance with regulations, including required separation distances between buildings, water systems, and septic systems. Thus, anytime that a homeowner of an inherited old property wants to improve

their property in a way that requires some approval from the Health Department, Defendant's practices trigger correction orders for a new septic system to be installed, even if it is not required under the regulations.

14. Mr. Baird would never expose his family that is in the farmhouse to unsafe living conditions, and he will comply with all lawful requirements and correction orders. This case challenges Defendant's use of inaccurate and misdated correction orders, their threats and pressure tactics, their retaliation for seeking legal counsel, and their denial of fair process—not Mr. Baird's obligation to maintain a safe and compliant septic system or comply with the law.

15. Mr. Baird seeks declaratory and injunctive relief, nominal damages, attorneys' fees, and costs.

## JURISDICTION AND VENUE

16. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

17. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

18. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Kent County, Michigan, which is within the Western District of Michigan, Southern Division.

## PARTIES

19. Plaintiff, Bruce L Baird, is a natural person and citizen of the State of Michigan. Plaintiff is the trustee and primary beneficiary of the Baird Bruce L Trust (the "Trust"), which holds title to the real property located at 13637 3 Mile Road NE, Lowell, Michigan 49331 (the "Property"). In his capacity as trustee and beneficial owner of the Trust, Plaintiff has the right to possess, use, and protect the Property and is the real party in interest with respect to the claims in this action.

20. Defendant County of Kent is a Michigan municipal corporation and "person" within the meaning of 42 U.S.C. § 1983.

STATEMENT OF FACTS

21. Most farms and homes in rural areas do not have access to government water and sewer systems. Instead, they have individual wells that serve drinking water from the ground and individual onsite septic systems that handle sewage. The goal with onsite septic systems is to safely disperse wastewater into the ground. Onsite septic systems operate as follows. Any time you flush the toilet, take a shower, or put something down the drain, the waste flows through pipes from the home into one or more underground septic tanks located outside the home, where solids settle before decomposing. Wastewater then flows through one pipe out of the septic tank. The pipe out of the septic tank sends the wastewater effectively through a series of pipes with holes in them that allow the wastewater to disperse into the ground. This is called a drain field. What makes these systems safe is that the soil filters and treats the wastewater before it reaches groundwater, which is why public health regulations require drain fields to be far enough from wells to prevent contamination.

22. Plaintiff is 84 years old. He farmed his family property his entire life and became the sole owner of the Property in 2014. The farmhouse on the Property has been in Plaintiff's family for generations, and the septic system was installed in the 1940s or 1950s.

23. When Plaintiff inherited the Property, he found no records of precisely when the septic system was installed or where the drain field is exactly located. But Plaintiff's farmhouse is served by an onsite septic system. Like all systems, it has a septic tank. Like all systems, it has a pipe running out of the septic tank. The pipe running out of the septic tank likely leads to a drain field in the backyard beneath the green grass lawn where Plaintiff's great-grandchildren play. Since the septic system was installed, the system has

never had any issues, and water tests from the farmhouse have not indicated contamination.

24. In the spring of 2025, Plaintiff's young great-grandchild, who is living in the farmhouse, received an initial blood test suggesting an elevated lead level. Follow-up testing was normal, and water tests from the farmhouse were also normal. The initial result nonetheless caused concern about the existing well, and Plaintiff decided to replace it.

25. Plaintiff applied for a well permit with the Kent County Health Department ("KCHD"). Well permits require an onsite visit by KCHD staff.

26. A KCHD site visit occurred on July 15, 2025. Plaintiff was not present; his counsel was. Counsel explained that Plaintiff inherited the Property, that the septic system was installed long ago, identified the approximate location of the septic tank, and explained that Plaintiff could not verify the precise location of the remainder of the system. Counsel also referenced the regulations' "grandfather clause" for pre-existing systems that do not create a health hazard, nuisance, or environmental degradation.

27. On July 15, 2025, Defendant issued a correction order ("July 15 Order") directing Plaintiff to apply for a septic permit by July 31, 2025 and to install a new septic system by November 28, 2025.

28. The July 15 Order has a stated factual basis that the house did not have a "recognizable" septic system and that a pipe from the house to a "ditch in the cornfield" was "mentioned per homeowner." This is false: Defendant was aware of the septic tank; Plaintiff was not present at the site visit; and there is no ditch in the cornfield.

29. To comply with the July 15 Order, Plaintiff applied for a septic permit before the stated deadline. KCHD issued a septic permit on September 9, 2025, with an expiration date in September 2027.

30. On October 29, 2025, Plaintiff requested an extension of the correction order deadline until April 2026, citing overlapping planning and financing constraints,

including limitations associated with the property's P.A. 116 Farmland Preservation status.

31. On October 31, 2025, Defendant responded that, "due to the imminent health hazard present," it normally would not extend a correction order; she then presented options including vacating the home or implementing expensive and temporary "pump-and-haul" measures (with a signed agreement) pending further work.

32. On November 17, 2025, after Plaintiff's counsel asked Defendants to withdraw the earlier order, Defendant, through Brendan Earl, refused, asserting that he had "no records of septic tanks, drywells, drain beds, or a drainfield," and contending that, "to the best of our knowledge, no septic system exists and wastewater most likely goes to field tile and/or a drainage ditch." He stated KCHD would withdraw the order only if Plaintiff provided proof by scoping the septic line and/or digging up the drain bed.

33. There are no drain tiles anywhere near the farmhouse or septic system. After Defendant requested a schematic of drain tiles in the cornfield, Plaintiff provided a 2012 receipt with a map reflecting installed drain tiles. The map shows no drain tiles near the farmhouse—none within roughly one-third of a mile.

34. Defendant has refused to provide evidence supporting the alleged violations, refused to identify the rule authorizing a correction order solely because the system's precise location/operation was not yet documented, and made threats regarding enforcement that would displace the family living in the farmhouse.

35. When Plaintiff's counsel requested documentation supporting the alleged violations, Defendant responded that KCHD was "unable to provide … field notes or other documentation due to the Freedom of Information Act (FOIA)." The records later produced through FOIA showed that Defendants issued a correction order without any evidence that the existing septic system was failing, creating a nuisance, or harming the environment.

36. In an email to Plaintiff's counsel, Defendant further explained that KCHD's sewage, housing, and nuisance regulations require a "sewage disposal facility *acceptable* to the Health Officer," and asserted that "13637 3 Mile Rd NE doesn't have an acceptable or approved septic system." Defendant has applied this "acceptable to the Health Officer" standard as a substitute for evidence of any actual system failure or public-health hazard, while also noting that "[p]lus, KCHD regulations have always held up under legal scrutiny in the past."

37. On November 21, 2025, Defendants issued a new correction order ("November 21 Order") that added more severe alleged violations not present in the July order.

38. The November 21 Order also corrected the prior false factual assertion, deleting mention to "[a] pipe from the house to the ditch in the cornfield was mentioned per homeowner" and replacing the earlier factual basis with a different factual narrative.

39. On all KCHD violation/correction orders, there are two dates: the alleged violation date at the top of the document labeled "violation date," and the date the order was filled out, signed, and transmitted at the bottom of the document next to the signature line labeled "date." The November 21 Order was misdated in a manner that impaired appeal rights and was transmitted only by email.

40. The November 21 Order alleged violation of Rules 301 and 302 of Article III of the Housing Regulations for Kent County, Michigan. Violations for these housing regulations were not present in the July 21 order. Under these Housing Regulations, "[t]he Notice of Violation and order shall be delivered to the alleged violator … either personally, or by registered mail, to the alleged violator's last known address" (Section 1002). Although the November 21 Order cited Kent County Housing Regulations with these service requirements, it was not served by an authorized method (by email only). When counsel raised this defect, Defendant's counsel responded that "[t]he Kent County Regulations you cite are irrelevant."

- 9 -

41. The correction order's "RIGHT TO APPEAL" language states only that the recipient must "petition the Health Department in writing within 20 days receipt of this violation/correction." KCHD has no appeal form publicly available on its website (which a staff member has confirmed). Despite multiple written requests by counsel for appeal/hearing instructions, KCHD did not disclose any requirement of a department-specific appeal form or a $250 filing fee.

42. On November 26, 2025—five days after receipt of the November 21 Order—Plaintiff submitted a written appeal. The appeal was hand delivered. KCHD staff opened the letter, reviewed the contents of the appeal, accepted the appeal, stamped it received, and docketed it without mentioning any form or fee requirement.

43. During the remainder of the 20-day appeal period, Defendants did not notify Plaintiff's counsel that they considered the appeal deficient or provide an opportunity to cure any alleged deficiency.

44. On December 15, 2025—after the 20-day window—Defendant's counsel denied the appeal on the ground that it was not submitted on a KCHD form and did not include a $250 filing fee, and further asserted that any later attempt to appeal would be untimely.

45. Plaintiff obtained a well and septic permit stating that "well installation is required prior to septic system installation" and that "final approval of this well is required prior to use." This sequencing is necessary because the proposed new septic system would be located where the current well sits, so installing the septic first would make the farmhouse uninhabitable (without running water) for weeks or months, depending on contractor availability.

46. Relying on the permit, Plaintiff contracted to have a new well drilled. The well was drilled and was ready to be connected. On November 24, 2025, Plaintiff requested that Defendants conduct required water testing and complete steps for final approval so the well could be used.

47. Defendants responded that the Health Department could not approve the new well until a septic system was installed and passed inspection. This creates a Catch-22: the permit requires the well to be installed and approved before septic installation may proceed, yet Defendants refuse to approve the well unless septic installation and inspection occur first.

48. As a direct and proximate result of Defendant's actions, Plaintiff has suffered, and continues to suffer, harm including but not limited to: (a) Loss of procedural rights and denial of a meaningful opportunity to appeal or contest the correction orders; (b) Threatened citations, penalties, and enforcement actions; (c) Anxiety, distress, and disruption of the use and enjoyment of the Property; (d) Time and expense in attempting to correct the record, respond to the defective order, and pursue public records; and (e) Potential diminished property value and the prospect of incurring substantial costs to comply with an order issued and enforced in violation of due process.

## FIRST CLAIM FOR RELIEF

**Violation of Procedural Due Process (Fourteenth Amendment) – 42 U.S.C. § 1983**

49. Plaintiff hereby incorporates by reference all stated paragraphs.

50. Plaintiff has constitutionally protected interests in the use and enjoyment of the Property, in being free from arbitrary and unlawful government orders that restrict that use, and in the fair and lawful application of sewage and housing regulations.

51. Defendants, acting under color of state and local law, deprived Plaintiff of these protected interests without due process of law.

52. Defendants issued the July 15 Order with materially inaccurate facts and issued the November 21 Order with a misdated signature date of July 15, 2025.

53. Defendants refused to recognize the November 21 Order as a new or materially revised order for purposes of appeal and refused to provide Plaintiff with an opportunity to appeal the revised factual basis and newly alleged violations.

54. By misdating the November 21 Order, mischaracterizing the nature of the revision, and refusing to treat the order as appealable from the date of actual receipt, Defendants denied Plaintiff adequate notice and a meaningful opportunity to be heard.

55. After Plaintiff's counsel challenged the July 15 Order, Defendants escalated to more severe alleged violations. That escalation was tied to Plaintiff's decision to seek legal assistance and further deprived him of a meaningful opportunity to be heard and effectively penalized him for asserting his rights.

56. Defendants further denied Plaintiff due process by refusing to engage with Plaintiff's counsel in communications about the correction orders and by refusing to provide Plaintiff's counsel with contact information of the county's relevant legal department or a clear way to challenge the orders.

57. Defendants further denied Plaintiff due process by not granting an appeal that followed the appeal requirements on the face of the November 21 Order.

58. Defendant's actions and omissions constitute alleged violations of Plaintiff's procedural due process rights under the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.

59. As a direct and proximate result of these alleged violations, Plaintiff suffered the injuries described above and is entitled to relief as requested below.

**SECOND CLAIM FOR RELIEF**

**Monell Liability – Unconstitutional Policy, Practice, or Custom – 42 U.S.C. § 1983**

60. Plaintiff hereby incorporates by reference all stated paragraphs.

61. The Defendant's practice is simple: if you inherit a farmhouse with an old, perfectly working septic system that you did not install and are honest with the Kent County Health Department that you cannot personally document exactly where all the parts of the system are located, it will hold that your property is in violation of sewage and housing regulations. Defendants admit that their practice is to exercise almost unlimited discretion in issuing correction orders, pointing to regulations that require

every property to have a "sewage disposal facility *acceptable* to the Health Officer." Under their practice, compliance turns not on evidence of any actual problem, but on whether the specific Health Officer assigned to your case is willing to deem a system "acceptable." By using that discretion in this way, Defendants' practices are to ignore a basic rule-of-law principle that if the government is going to interfere with your property rights, it must have evidence and be prepared to show it.

62. Defendant's practices are to flip the burden of proof and require homeowners to disprove alleged violations that the Department fails to offer any evidence of, which requires owners dig up their yards. The Defendant's practices gut the grandfather clause in the regulations—allowing "[s]ewage disposal facilities in use prior to the effective date of these Regulations [to] continue in use only if such usage does not create a hazard to public health and safety, a nuisance, or degradation of the natural environment"—and replaces it with an unwritten rule that old, undocumented systems are presumptively illegal.

63. Defendant's legal department has practices that constitute policymaking for purposes of Monell because it directs and ratifies KCHD enforcement and appeal positions, including taking positions that treat the procedural safeguards cited in Defendant's own orders as "irrelevant" and denying Plaintiff a meaningful opportunity to be heard.

64. The constitutional deprivations described in this Complaint were caused by policies, practices, or customs of the County of Kent and KCHD, including but not limited to: (a) A custom, practice, or policy that prevents people who inherit property that has a fully functional septic system that was built before the regulations—and thus grandfathered in—from making full use of their property by requiring them to prove the location of their system or install a new septic system even though it is not required under the regulations; (b) A custom, practice, or policy of issuing revised correction orders without changing the issuance date, thereby concealing changes in material facts and

violations and shortening or eliminating appeal periods; (c) A custom, practice, or policy of treating procedural safeguards cited in Defendant's own orders as "irrelevant"; (d) A custom, practice, or policy of refusing to recognize or process appeals from materially revised correction orders regardless of when the revision was actually issued; (e) A custom, practice, or policy of refusing to provide affected property owners or their counsel with access to the County's or KCHD's legal counsel and refusing to provide clear information about appeal procedures; and (f) A custom, practice, or policy of enforcing health and housing regulations in an arbitrary or selectively punitive manner.

65. These policies, practices, and customs directly caused the alleged violations of Plaintiff's constitutional rights.

66. The County of Kent either adopted these policies/practices/customs, knew about similar problems and failed to fix them, or turned a blind eye to the obvious risk that these practices would violate people's constitutional rights.

67. As a direct and proximate result of these alleged violations, Plaintiff has suffered and continues to suffer the injuries described above and is entitled to relief as requested below.

### THIRD CLAIM FOR RELIEF

### First Amendment Retaliation / Interference with

### Right to Petition – 42 U.S.C. § 1983

68. Plaintiff hereby incorporates by reference all stated paragraphs.

69. Plaintiff engaged in activity protected by the First Amendment, including retaining counsel, challenging the correction orders, pursuing an appeal, and filing this lawsuit to petition the government for redress.

70. After Plaintiff engaged in this protected activity, Defendants took adverse actions, including escalating the scope and severity of alleged violations, threatening enforcement actions (including condemnation), and otherwise increasing coercive pressure rather than correcting errors or providing a meaningful opportunity to be heard.

These actions would deter a person of ordinary firmness from continuing to engage in protected activity.

71. There is a causal connection between Plaintiff's protected activity and Defendants' adverse actions, including escalating sanctions after Plaintiff retained counsel and Defendants' statements and conduct reflecting hostility toward Plaintiff's efforts to contest the orders and seek legal relief.

72. Defendants' actions constitute retaliation for Plaintiff's exercise of First Amendment rights, actionable under 42 U.S.C. § 1983.

73. As a direct and proximate result of these alleged violations, Plaintiff suffered the injuries described above and is entitled to relief as requested below.

RELIEF REQUESTED

WHEREFORE, Plaintiff asks this Court:

A) to order Defendants to follow the steps that they outlined in the permit: conduct the required water tests and complete all other necessary steps for final approval of the new well at the Property, and to approve the well if it satisfies all applicable requirements;

B) to declare that the July 15 Order is void or unenforceable;

C) to declare that the November 21 Order is void or unenforceable;

D) to declare that Defendant's issuance of the July 15 Order violated Plaintiff's rights under the United States Constitution and is actionable under 42 U.S.C. § 1983;

E) to declare that Defendant's issuance, misdating, and service of the November 21 Order violated Plaintiff's rights under the United States Constitution and is actionable under 42 U.S.C. § 1983;

F) to declare that without evidence that the existing system is failing, creating a nuisance, or degrading the natural environment, Defendant's application of Rule 302's "acceptable to the Health Officer" requirement to Plaintiff violates the Due Process Clause;

G) to enjoin Defendants from enforcing the July 15 Order and the November 21 Order against Plaintiff and from issuing citations or other penalties based on either order unless and until lawful procedures are followed;

H) to enjoin Defendants from taking or threatening any enforcement or other adverse action against Plaintiff in retaliation for retaining counsel, challenging the correction orders, filing this lawsuit, or otherwise exercising his rights to seek legal assistance and petition for redress;

I) to enjoin Defendants from repeating the constitutional alleged violations described in this Complaint, including by (i) using misdated or inaccurate correction orders, (ii) serving correction orders in a manner inadequate under the relevant regulations, or (iii) denying property owners a meaningful opportunity to appeal based on the actual date an order is issued and received and in the form indicated on the face of the correction order;

J) to order Defendants to provide Plaintiff a meaningful opportunity to contest any correction order or alleged violations concerning the Property, with applicable deadlines running from the date of actual receipt of the relevant order or citation, and with notice of any required form, fee, or procedural prerequisites sufficient to permit timely compliance;

K) to award Plaintiff nominal damages in the amount of $1.00 for the violation of his constitutional rights;

L) to award Plaintiff reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and other applicable law;

M) to award such other and further relief as the Court deems just and proper.


**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues properly triable by a jury.

- 16 -

Respectfully submitted,

/s/ Kyle Rozema

Kyle Rozema (P78604)

Attorney for Plaintiff

375 E. Chicago Ave.

Chicago, IL 60611

Tel: (616) 706-5125

Email: kylerozema@gmail.com